# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHAWNA MARIE N.,[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 21-2076-JWL |
| KILOLO KIJAKAZI,[2] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for DIB on July 3, 2018. (R. 15). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in failing to consider her migraine headaches in accordance with Social Security Ruling (SSR) 19-4p, and thereby erred in failing to find that the severity of her condition medically equals Listing 11.02, in assessing Plaintiff's residual functional capacity (RFC), and in finding at his step five evaluation that work exists in the national economy of which Plaintiff is capable.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the

Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  All Plaintiff's allegations of error hang on an alleged error in evaluating her headaches in accordance with SSR 19-4p.

**II.     Discussion**

Plaintiff claims the ALJ "completely ignored the directives found in SSR 19-4p" regarding primary headache disorder.  (Pl. Br. 10).  She argues, based on SSR 19-4p, "it is abundantly evident that Plaintiff medically equals listing 11.02 and a finding that she does in fact meet or equal that listing should have resulted."  Id. at 11.  Plaintiff summarizes the ALJ's discussion of her headaches and argues without pinpoint citation that the record demonstrates error in the ALJ's summary.  Id. at 11-12.  She argues the ALJ should have but failed to make findings at step three regarding Listing 11.02 and this

4

error is harmful because, "In the absence of such findings, a reviewing court cannot assess whether relevant evidence adequately supports the ALJs conclusion, and whether the ALJ applied the correct legal standards to arrive at that conclusion."  (Pl. Br. 12-13) (citing Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)).

The Commissioner responds, "The ALJ reasonably found that Plaintiff had work-related limitations stemming from her headaches but that they were not disabling." (Comm'r Br. 4) (bold omitted).  She argues that the medical records before the Plaintiff's alleged onset date (June 1, 2012) show she complained of headaches, id. (citing R. 343, 347, 383, 396), and the medical records after her date last insured (June 30, 2018) show she complained of headaches.  Id. (citing R. 612, 615, 619, 672, 691, 697).  But, she points out there are only two medical records during the relevant period relating to medical treatment for headaches, one in 2014 when Plaintiff was hit in the head with a can and complained of a headache (R. 546) and one in October 2013 when Plaintiff underwent a consultative medical evaluation and told Dr. Rupp, the examining physician, "she experienced weekly headaches but was not on any medication to treat them." (Comm'r Br. 4-5) (citing R. 419, 421).

The Commissioner summarized the ALJ's evaluation of Plaintiff's headaches during the relevant period and noted he assessed limitations to account for them.  Id. at 5. She noted the ALJ cited Dr. Rupp's report that Plaintiff stated she was not on any medication to treat her headaches and did not report any emergency room visits.  Id.  She argues Plaintiff cannot show error in the ALJ's failure to cite SSR 19-4p or Listing 11.02 because she cannot show she meets all the criteria of the Listing.  Id. at 6 (citing Duncan

5

v. Colvin, 608 F. App'x 566, 576 (10th Cir. 2015); and Walters v. Colvin, 604 F. App'x 643, 647 (10th Cir. 2015)).  She argues the ALJ found severe headaches at step two and included work-related limitations to account for them.  (Comm'r Br. 7) ("occasionally avoiding exposure to bright light and loud noises, no working around hazards, having only occasional exposure to vibration, performing only simple tasks").

### A.     Step Three Standard

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling.  20 C.F.R. § 404.1525(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If a claimant's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling.  Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, the claimant "has the burden at step three of demonstrating, through medical evidence, that her impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)); see also, Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (burden shifts to Commissioner only at step five).  "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing.  Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define

impairments that would prevent an adult, regardless of her age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

Medical equivalence to a listing may be established by showing that the claimant's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). The determination of medical equivalence is made without consideration of vocational factors of age, education, or work experience. 20 C.F.R. § 404.1526(c).

SSR 19-4p explains the means whereby a claimant might establish a primary headache disorder medically equals Listing 11.02 for epilepsy (dyscognitive seizures).

> Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing.
>
> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment.
>
> \*\*\*

7

> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning.

SSR 19-4p, <u>Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders</u>, 2019 WL 4169635, *7 (SSA Aug. 26, 2019).

### **B.     Analysis**

Plaintiff's argument that her headaches medically equal the criteria of Listing 11.02 based upon SSR 19-4p is not supported by the record evidence during the relevant time period between her alleged onset date in June 2012 and her date last insured of June 30, 2018.  As the Commissioner argues, the record evidence does not demonstrate any medical treatment for migraine headaches during that period.  And Plaintiff reported to Dr. Rupp on October 26, 2013 she had no history of emergency room visits for her headaches, no injection management, and no suppressive management.  (R. 419, 421).  On this record, Plaintiff cannot show prescribed treatment for her headaches, much less adherence to prescribed treatment for three months during the relevant time period as Listing 11.02 requires.  In her Brief, where Plaintiff asserts her condition medically equals the Listing, she provides no citation to the record.  (Pl. Br. 11-13).  She later cites record evidence in support of this argument, but all that evidence is from after the relevant period.  <u>Id.</u> 15-16 (citing R.616, 619, 620, 623).  This court may not make a disability decision relating to a period after the ALJ's decision, but if Plaintiff feels she is now disabled, she may reapply for disability and the agency will once again consider whether she is eligible and meets the requirements for disability.

On the face of the record here it is by no means clear the ALJ erred in failing to mention SSR 19-4p when considering Plaintiff's headaches, but if he did, any error was harmless.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated February 25, 2022, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**